IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No.  05-10218-01-WEB |
| | ) |
| CARMEN L. CAMPBELL, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**Memorandum and Order**

Defendant Carmen Campbell pled guilty to one count of embezzlement by a bank employee, one count of wire fraud, five counts of bank fraud, and one count of criminal forfeiture. On October 23, 2006, the matter came before the court on the parties' objections to the Presentence Report and for sentencing. The Government filed two objections to the PSR. The defendant also filed two objections and moved for a downward departure. The court ruled orally on these matters at the conclusion of the sentencing hearing. This written memorandum will supplement the court's oral ruling.

I. *Government's Objections to PSR*.

1. *The Government's first objection is that defendant should receive an enhancement for using "sophisticated means" under USSG § 2B1.1(b)(9)*. The Government contends the scheme involved a complex series of documents and events that helped the defendant conceal the embezzlement scheme from bank insiders, customers and auditors for a period of several years. It argues the defendant's conduct was more intricate than the typical "insider" embezzlement case. The defendant, on the other hand, argues the scheme was not unusually complex. Defendant says

it was not the complexity of the offense but her position as a loan officer and branch manager that allowed her to continue the scheme, and she points out the offense level already includes a 2-level enhancement for "abusing a position of trust."  Defendant argues the Government is actually is seeking an enhancement for "more than minimal planning" -- an enhancement that was deleted from the theft guideline when it was reorganized in 2001.  Defendant contends the sophisticated means enhancement has historically been applied in offenses involving fictitious companies or stolen identities, and she points out no such conduct took place here.  She argues the instant offense only involved approving loans to her mother and sister, and she argues that such conduct does not qualify for the sophisticated means enhancement.

Section 2B1.1(b)(9) provides for a 2-level enhancement if the defendant relocated a fraudulent scheme to another jurisdiction to evade law enforcement, if a substantial part of the fraudulent scheme was committed outside the United States, or if "the offense otherwise involved sophisticated means,..."  Insofar as this last clause is concerned, the commentary provides

> "[S]ophisticated means" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense.  For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means.  Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

USSG § 2B1.1, comment n. 8(B).

After considering the circumstances of the offenses, as shown both by defendant's prior admissions and the evidence presented at the sentencing hearing, the court finds an enhancement for sophisticated means should be applied.  Among other things, the defendant concealed this scheme by using multiple loans, by using several people (either wittingly or unwittingly) -- both

inside and outside the bank -- to further the scheme, and by making payments from the accounts of a significant number of innocent bank customers. She engaged in what was accurately described as a form of "kiting," where she made frequent payments from account to account in order to hide the scheme. There is also evidence that she falsified information in loan files in order to further the scheme. As the Government points out, the factual basis admitted by the defendant at the time of her guilty plea gives an indication of the complexity of the scheme. The Government presented evidence that the defendant's knowledge as a former FDIC examiner likely aided defendant in structuring the scheme so as to avoid detection. The evidence shows the defendant's ability to carry out this scheme was due not only to the abuse of a position of trust, but also because her scheme was sufficiently complex that it was unusually difficult to detect. When the defendant's conduct is compared to other instances of bank fraud and embezzlement, the court concludes it is fairly characterized as employing "sophisticated means" within the meaning of the guidelines, even if it did not involve the use of fictitious persons or entities.[1]

With this enhancement applied, the defendant's offense level would be 20 instead of 18, and the advisory guideline range would be 33-41 months, rather than 27-33 months.

2.    *The Government's second objection is that defendant should receive a 2-level enhancement for being a "leader or organizer" of a criminal activity under USSG 3B1.1.* The Government contends the defendant was a leader or organizer of two other participants in the

---

[1] The court rejects defendant's contention that the Government is improperly seeking to revive the "more than minimal planning" enhancement. As noted above, the defendant's scheme may fairly be described as using sophisticated means. Moreover, the "more than minimal planning" enhancement was eliminated for two reasons, one of which was to avoid the potential overlap between that enhancement and the enhancement for "sophisticated means." *See* USSG Supp. App. C, amend. 617, p. 176 (2003).

offense -- her mother and her sister -- and/or that her conduct was "otherwise extensive" as defined in the guidelines such that she should receive a 2-level enhancement. The defendant, meanwhile, contends the enhancement is inapplicable because her mother and sister do not qualify as participants in the offense. She argues these other two individuals were not criminally responsible for the bank fraud, embezzlement or wire fraud offenses, noting that Ms. Gray pled guilty to a misdemeanor count of receiving stolen property, and Ms. Feltman (defendant's sister) was not charged with an offense. Moreover, defendant contends there is no evidence that she was the "leader, organizer, manager or supervisor" so as to qualify for the enhancement. The court concludes that an enhancement under Section 3B1.1 should not be imposed in this case. To qualify for this enhancement, the defendant ordinarily must have been the organizer, leader, manager or supervisor of one or more other participants, with a participant being defined as "a person who is criminally responsible for the commission of the offense, but [who] need not have been convicted." USSG, comment, n.1. Individuals who may have played some part in the commission of the offense, but who lack the requisite criminal intent, are not criminally responsible and are therefore not participants. *See United States v. Martinez*, 2004 WL 27742, 85 Fed.Appx. 146 1166 (10th Cir., Jan. 6, 2004). Although the actions of the defendant's sister and mother may have allowed the defendant to carry out her scheme, the court is not persuaded that they shared the defendant's guilty knowledge such that they should be considered participants.[2] The Government correctly points out that a fraudulent scheme which "used the unknowing services of many outsiders" can be considered extensive, USSG 3B1.1, comment n. 3, and it argues the defendant should receive the enhancement

---

[2] The court notes that in the plea agreement of Ms. Gray (the defendant's mother), the parties' agreed that Ms. Gray "did not know about the specifics of defendant Campbell's scheme to defraud," but that she "should have known but for her deliberately blinding herself to this fact...."

4

for having used numerous individuals to carry out the scheme. Although the Government's argument has some evidentiary support, the court concludes that application of the enhancement based on such a factor would essentially duplicate the "sophisticated means" enhancement, given that the same factor formed part of the basis for application of that enhancement. Under the circumstances, the court does not believe the "leader or organizer" enhancement is appropriate.

II. *Defendant's Objections to PSR.*

1. *Defendant's first objection is to the loss figure of $326,346.65 in the Presentence Report.* Defendant argues the loss figure in paragraph 55 of the PSR is overstated and should be reduced by: a) $29,568.48 in total payments allegedly made by the defendant back to the bank in the course of the scheme; and b) $82,000 in proceeds currently held by the U.S. Marshals from real property sold by the defendant pursuant to an agreement with the United States. Defendant thus contends the amount of the loss should be $214,778.17.

As the Probation Office notes, this objection has no impact on the offense level or the resulting guideline range for imprisonment, because the offense level is increased by 12 points for a loss anywhere between $200,000 and $400,000. *See* USSG § 2B1.1(b)(1)(G). And under § 2B1.1 the court "need only make a reasonable estimate of the loss" for purposes of this guideline. USSG § 2B1.1, comment, n. 3(C). In light of the foregoing, the court concludes that defendant's objection should be denied as moot because it will not affect the offense level. The PSR's determination that the loss exceeded $200,000 is undisputed and is supported by substantial evidence. The PSR thus correctly added 12 points to the offense level under § 2B1.1.

2. *Defendant's second objection concerns the restitution figure of $301,668.65 in paragraph 123 of the PSR.* Defendant next argues the restitution amount should be $214,778.17 (see

defendant's objection above) less the amount liquidated by defendant from her retirement account and paid over to Prairie State Bank ($64,558.67), for a total restitution figure of $150,219.50. The Government argued that the figure in the Presentence Report was correct.

Prairie State Bank submitted a form in this case (accompanied by explanatory letter) declaring losses in an amount exceeding $2.8 million. Among those losses was the sum of $326,346.65, which the Bank found to be the total sum directly taken by the defendant or the "direct embezzlement cost." The form noted the Bank had received partial reimbursement of that sum in the amount of $301,668.65 from its insurance with the Kansas Bankers Surety Company. The PSR apparently concluded that the Bank's claims for losses other than the direct embezzlement cost were too remote to qualify for restitution. *See* 18 U.S.C. § 3663A(a)(2) (victim may obtain restitution if "directly and proximately harmed" by defendant's offense). As a result, the PSR found that Kansas Bankers Surety Company was the victim and was owed restitution in the amount of $301,668.65. The PSR declined to give defendant any credit against this amount for the sums claimed by defendant above, noting that the Kansas Bankers Surety Company did not receive any of these sums. At the sentencing hearing the Government presented evidence to support the Bank's loss claim form.

The court determines that the restitution figure in the PSR is supported by the evidence. Although the evidence might in fact support a higher amount of restitution, the direct loss to the Bank of $326,346.65 and the reimbursement of $301,668.54 provided by Kansas Bankers Surety as a direct consequence of defendant's conduct are clearly supported by the evidence. Under 18 U.S.C. § 3664(j)(1), when the victim has received compensation from insurance, the court "shall order that restitution be paid to the person who provided ... the compensation ...." Based on this provision, the PSR correctly determined that Kansas Bankers Surety was a victim and was owed the

full amount of its payment to the Bank.  As the PSR noted, Kansas Bankers Surety has not received any of the proceeds for which defendant now claims credit, and it is uncertain whether it will obtain such proceeds in the future.[3]  If Kansas Bankers Surety is able to recover such sums in the future, defendant may be entitled to a reduction in the amount of restitution owing.  *See* 18 U.S.C. § 3664(j)(2).  At this point, however, defendant is not entitled to such credit.

Additionally, as part of the plea agreement in this case the defendant agreed that the United States is entitled to the entry of a personal forfeiture money judgment against her for the amount of proceeds obtained by her as a result of the violation in Count 3.  The parties did not agree upon the amount of the judgment, but agreed to submit this question of fact to the court for determination at sentencing.  Doc. 35 at p.5.  Based on the evidence presented and the defendant's admissions, the court concludes the United States is entitled to a money judgment against the defendant Carmen Campbell in the amount of $326,346.65, the amount of money embezzled by the defendant from Prairie State Bank.

III.  *Defendant's Motion for Downward Departure*.

---

[3] None of the sums identified by defendant serve to reduce the restitution award to Kansas Bankers Surety.  The $82,000 in proceeds from the sale of Sumner County real property is currently being held by the U.S. Marshals and has not been disbursed.  Defendant would be entitled to reduction of the restitution order only if such proceeds are paid over to Kansas Bankers Surety.

The $64,558.67 in proceeds from liquidation of defendant's retirement account was paid over by defendant to the Prairie State Bank, but the evidence shows the Bank's consequential losses from the offense far exceed the amount of restitution payable under § 3633A.  This payment therefore does not appear to constitute compensation "for the same loss" suffered by Kansas Bankers Surety.  *Cf.* 18 U.S.C. § 3664(j)(2) (restitution amount to be reduced by the victim's recovery of damages for the same loss).  Defendant would be entitled to a reduction in the restitution for such proceeds only if they were paid over by the Bank to Kansas Bankers Surety to reimburse it for its loss.

Finally, the defendant's claim for credit because she allegedly paid $29,568.48 back to the Bank in the course of the scheme is unpersuasive.  The evidence shows that the defendant's use of such payments served to increase rather than decrease the Bank's losses from the scheme.

Finally, defendant moves for a downward departure -- or in the alternative a variance from the advisory guideline range -- and asks for a sentence of 10 to 15 months custody, with half of the time served in custody and half on house arrest, as provided for in Section 5C1.1(d). Defendant argues Ms. Campbell has exhibited "extraordinary acceptance of responsibility" by voluntarily giving depositions before being indicted, and says she candidly admitted under oath to stealing money from the bank and pledged to help in its investigation. Also, after her indictment, she liquidated her retirement account and sold real property that had been purchased with loan proceeds, and she turned over these amounts to the bank or to the government. Defendant argues that allowing her to serve half of her sentence on house arrest would allow her to care for her three children (ages 9, 12 and 15) during this period of her sentence.

Insofar as a traditional departure under the guidelines is concerned, a defendant is entitled to a downward departure from the guideline range only if the circumstances are sufficient to remove her from the "heartland" of those defendants charged with the same offense. *See United States v. Marquez-Gallegos*, 217 F.3d 1267, 1270-71 (10th Cir. 2000). The circumstances here are not outside the heartland. Defendant argues that her acceptance of responsibility was exceptional, but the evidence shows defendant only cooperated after the Bank discovered evidence of the fraudulent scheme and that her cooperation and admissions thereafter were somewhat limited. Defendant made some efforts to provide restitution and fully admitted her guilt after being charged, but as the Government pointed out at the sentencing hearing, post-offense rehabilitation is accounted for in the acceptance of responsibility adjustment under § 3E1.1 (which defendant has received), and it thus may not serve as a basis for departure unless it is present to an exceptional degree. *See United States v. Benally*, 215 F.3d 1068, 1075 (10th Cir. 2000). The defendant's acceptance cannot be

characterized as exceptional. Additionally, defendant's arguments relating to her family situation do not warrant a downward departure. Family responsibilities are a discouraged factor which the district court may consider only in the most extraordinary cases for the purpose of departing downward. *See United States v. McClatchey*, 316 F.3d 1122, 1130 (10th Cir. 2003). Under these standards, the defendant is not entitled to a departure from the guideline range.

The guidelines of course are now advisory rather than mandatory, although the court must still consider the guideline range in determining the sentence. Under 18 U.S.C. § 3553(a), the court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing as set forth in § 3553(a)(2). In doing so, the court must consider a number of factors, including the nature and circumstances of the offense and the history and characteristics of the defendant; the purposes of sentencing in § 3553(a); the kinds of sentences available; the kinds of sentence and the sentencing range established for the offense under the applicable sentencing guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

Based on those factors, the court concludes that a sentence at the high end of the guideline range -- 41 months -- represents an appropriate custodial sentence in this case. Although the defendant more or less admitted responsibility for her conduct after it was detected, and she made efforts to reimburse the bank, this does not alter the fact that she stole hundreds of thousands of dollars over an extended period of time, in a complex scheme that involved using the accounts of innocent customers. The court concludes that a sentence at the high end of the guidelines is necessary in this case to fulfill the purposes of sentencing, including to reflect the seriousness of the

offense, to promote respect for the law, and to provide just punishment.

IV. *Conclusion.*

The Government's objection to the absence of an enhancement for sophisticated means (USSG § 2B1.1(b)(9)) is SUSTAINED; such an enhancement shall be applied. The Government's remaining objection is DENIED. The defendant's objections to the PSR and her motion for downward departure (Doc. 46) are DENIED.

The Probation Officer in charge of this case shall see that a copy of this order is appended to any copy of the Presentence Report made available to the Bureau of Prisons. IT IS SO ORDERED this  24th  Day of October, 2006, at Wichita, Ks.

                                              s/Wesley E. Brown

                                              Wesley E. Brown
                                              U.S. Senior District Judge